NATIONALCARE CORPORATION, INC., American Group of Companies, Inc., The Nationalcare Companies, Inc., Estate of John V. Sullivan, and Nancy Gage, Individually, Plaintiffs,

v.

ST. PAUL PROPERTY AND CASUALTY INSURANCE COMPANY, Mutual Protective Insurance Company, Irving D. Parks, and John Does 1 Through 40, Defendants.

Civil Action No. 3:98CV462LN.

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 11, 1998.

Michael S. Allred, Allred Lae Form, Jackson, MS, for Plaintiffs.

George F. Bloss, III, Michael David Orr, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond Gulfport, MS, Thomas H. Suttle, Jr., Daniel, Coker, Horton & Bell, Jackson, MS, for Defendants.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

The plaintiffs in this cause, Nationalcare Corporation, Inc., American Group of Companies, Inc., The Nationalcare Companies, Inc. (collectively "Nationalcare"), Gordon L. Sullivan, individually, the Estate of John V. Sullivan, and Nancy Gage, individually, have moved the court to remand this case to the Circuit Court of Hinds County, Mississippi, First Judicial District, from which the case was removed. Defendants St. Paul Property and Casualty Company (St.Paul) and Mutual Protective Insurance Company (MPIC) have responded in opposition to the motion and have filed their own motions to dismiss, or more accurately, MPIC has moved to dismiss at least some of the plaintiffs' claims, and St. Paul has moved to dismiss, for judgment on the pleadings or for summary judgment as to all the claims of all the plaintiffs. The parties have fully briefed these various motions

and the court, having considered the parties' submissions on the motions, concludes that plaintiffs' motion to remand should be denied, that MPIC's motion to dismiss should be granted, and that St. Paul's motion to dismiss or for summary judgment should be granted in part and denied in part, all for the reasons explained as follows.

In February 1993, Nationalcare became a General Agent of MPIC pursuant to a "Regional General Agent Agreement" executed between those parties. Shortly thereafter, in March 1993, with Nationalcare's assistance, defendant Irving Parks became affiliated with MPIC as an agent and began selling insurance on behalf of MPIC. It should be noted at this point that the parties vigorously dispute the nature of Parks' affiliation with MPIC. The plaintiffs insist on the one hand that Nationalcare merely recruited Parks to be a district managing agent solely for MPIC and that he had no agency or other relationship whatsoever with Nationalcare, but MPIC and St. Paul contend that Parks was an agent/employee of Nationalcare and a soliciting agent for MPIC based on his association with Nationalcare. Whatever the nature of Parks' relationship with the other parties, it is undisputed that Parks, following his affilation with MPIC, wrote a substantial number of insurance policies for MPIC but, after collecting the initial premiums due under the policies, failed to remit the premium payments to MPIC and instead converted the money—totalling over $96,000—to his own use.

During this time, there was in effect a fidelity bond issued by St. Paul to MPIC by which St. Paul had agreed to indemnify "the Insured" for, *inter alia*, "[l]oss resulting directly from any dishonest or fraudulent act(s) committed by a General Agent ... [or] ... a Soliciting Agent acting alone or in collusion with others." Upon discovering Parks' theft of the premium money, MPIC made a claim under the bond for the losses caused by Parks. St. Paul ultimately paid the claim, or approximately $96,000 of the claim, and obtained an assignment of MPIC's claims on account of the loss. St. Paul then sued Parks in the Circuit Court of Harrison County, Mississippi, and obtained a default judgment in the amount of $98,995.29 (apparently representing the amount converted by Parks, together with attorneys' fees and costs). St. Paul separately sued Nationalcare in the Harrison County Circuit Court alleging that Parks was a soliciting agent of Nationalcare and that therefore, under the terms of Nationalcare's general agency agreement with MPIC, Nationalcare was bound to indemnify St. Paul, as MPIC's assignee/subrogee, for the losses caused by Parks. Nationalcare, which claimed that it, too, had sustained losses on account of Parks' misfeasance since it was deprived of "overwrite commissions" which it would otherwise have received from MPIC on the business written by Parks, responded with a counterclaim against St. Paul for alleged bad faith breach of St. Paul's fidelity bond provisions.[1]

Following the Harrison County Circuit Court's denial of Nationalcare's motion to transfer venue to Hinds County, Nationalcare, joined by Nationalcare's owners/stockholders (namely the Estate of John V. Sullivan, Nancy Gage and Gordon Sullivan), filed the present action against St. Paul and MPIC in Hinds County Circuit Court asserting basically the same claims as had comprised Nationalcare's counterclaim in the Harrison County litigation. The plaintiffs subsequently amended their complaint to add Parks as a defendant, alleging a claim for indemnity.

On October 16, 1997, St. Paul and MPIC removed the case to this court, asserting that neither defendant Parks nor plaintiff Gordon Sullivan, both Mississippi residents, is a proper party to the lawsuit and that there is diversity jurisdiction over the case.[2] Follow-

---

1. Plaintiffs explain that for district managers hired by MPIC in Nationalcare's territory, Nationalcare was to be paid a small commission on business produced. They claim not only that the commission due on the business produced by Parks has never been paid, but also that MPIC, under St. Paul's direction, has been withholding all commission monies due Nationalcare on other business in an effort to recover the monies paid by St. Paul for the losses caused by Parks.

2. St. Paul notes that plaintiffs filed their amended complaint naming Parks as a defendant just a few hours after counsel for St. Paul and MPIC

ing removal, St. Paul promptly filed a motion to dismiss, for judgment on the pleadings or for summary judgment, and MPIC moved to dismiss two of the claims alleged against it by plaintiffs. Plaintiffs responded to that motion and contemporaneously moved to remand. Both of those motions are now pending before the court. Because the motion to remand challenges subject matter jurisdiction, it will be addressed first.

■ As the court has indicated, defendants removed this case contending not only that Irving Parks, a resident defendant, was fraudulently joined to defeat diversity, but also that Gordon Sullivan, the one plaintiff whose citizenship is not diverse from that of Parks, lacks standing to bring any claim against any defendant relating to the subject matter of this litigation. For reasons which will become apparent *infra*, before reaching the question of plaintiffs' alleged fraudulent joinder of Parks, the court considers whether Gordon Sullivan has any viable claim to assert in this action.

In support of their contention that Gordon Sullivan is a proper plaintiff with standing to assert the various claims set forth in the complaint, plaintiffs appear to take the position that he has standing to sue in his capacity as an agent of MPIC, arguing that just as Parks' policyholder victims could have sued both MPIC and Irving Parks for the losses caused by Parks even though Parks is but an agent of his disclosed principal, MPIC, Parks' agent victims, presumably including Gordon Sullivan, could sue him for the losses they have sustained as a consequence of his wrongdoing,[3] and could likewise sue St. Paul

for the losses they have sustained as a consequence of its failure to pay under its policy for the losses caused them by Parks. The problem with this argument is that there is no allegation or intimation anywhere in the complaint that Gordon Sullivan was at any time an agent of Nationalcare or of MPIC or that he sustained any loss in his capacity as such an agent.

With respect to Gordon Sullivan specifically, plaintiffs allege only that he "served as Secretary and Treasurer of Nationalcare Corp. on various relevant occasions." The only individual actually identified as an agent of MPIC who is alleged to have had a right to receive premium commissions on the policy sales by Parks is John V. Sullivan; and in fact, plaintiffs' factual allegations concerning Gordon Sullivan relate solely to Gordon Sullivan's efforts to secure payment of commissions to *Nationalcare and John V. Sullivan*, both of which are expressly identified in the complaint as general agents of MPIC.[4] In this vein, plaintiffs allege that:

[MPIC] refused to pay the commissions due Nationalcare Corp. and John V. Sullivan; ...

Gordon L. Sullivan, as a representative of Nationalcare Corp., inquired of [MPIC] as to why Nationalcare Corp.'s commissions were not being paid; ...

[MPIC] represented to Gordon L. Sullivan that

Nationalcare Corp.'s commissions and John V. Sullivan's commissions that were owed would be held pending an investigation by [St. Paul], in regard to alleged misconduct of Irving D. Parks; ...

announced to plaintiffs' counsel that they intended to remove the case to federal court based on diversity jurisdiction. Defendants speculate, and likely with good cause, that plaintiffs added Parks when they did to thwart defendants' planned removal. Defendants still did remove the case, though, on the basis that Parks was fraudulently joined to defeat diversity.

3. The court can say only that this appears to be plaintiffs' position, since it is not altogether clear from their brief what their position is with respect to Sullivan's standing. They state:

It is not defense to Irving Parks that, in committing negligence, fraud, conversion and the like, he was the known agent of a disclosed

principal, to-wit: MPIC. Otherwise, how did St. Paul sue him? Is St. Paul suggesting that Parks' policyholder victims could not have sued both Parks and MPIC? Hardly. Then why can't Parks' agent victims sue him? Reason suggests that they can. Neither St. Paul's negligence and fraud liability unlimited by the terms of a contract [sic].

4. The court has gleaned from the parties' submissions that John Sullivan owned all or most of Nationalcare and was its president, and that Gordon Sullivan and Nancy Gage were John Sullivan's parents and were officers and/or stockholders in Nationalcare. Further, it appears that Nancy Gage is executrix of John Sullivan's estate.

[MPIC] assured Nationalcare Corp. and John V. Sullivan that, as long as John Sullivan, Gordon Sullivan and Nationalcare Corp. cooperated in the preservation of the policies written by Irving D. Parks and in [MPIC's] investigation ..., [MPIC] would pay commissions owed to Nationalcare Corp. and John V. Sullivan.

Based on these allegations, the complaint recites that "Plaintiffs"—clearly referring only to Nationalcare and John V. Sullivan— "are due commissions earned on said premium payments" and "have never been paid for commissions earned on said premium payments made under the terms of said St. Paul employee dishonesty policy." The question, then, would seem to be this: Since Gordon Sullivan was not an agent of MPIC and hence had no right to receive payment of any commission on premiums from Parks' policy sales, then why could Gordon Sullivan sue Parks or St. Paul on account of his not receiving such commissions? Reason suggests that he cannot.

█ Plaintiffs argue in further support of their motion to remand that Gordon Sullivan has standing based on the losses that he, through Nationalcare, has suffered as a consequence of the events alleged in the complaint. That is, they argue:

The Plaintiffs in this case are three successor corporations through which the Sullivans, father and son, did business. The combined acts of Parks, MPIC and St. Paul were absolutely ruinous in their effect upon Gordon Sullivan. Yet, we are told that he has no standing to sue for negligence, indemnity, fraud, theft and intentional wrongs perpetrated by St. Paul together with Parks and MPIC.

This argument ignores the clear Mississippi law that

an action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name but must be brought by the corporation because the action belongs to the corporation and not the individual stockholders whose rights are merely derivative. The rule applies even though the complaining stockholder owns all or substantially all of the stock of the corporation.

Bruno v. Southeastern Servs., Inc., 385 So.2d 620, 622 (Miss.1980). In Jordan v. United States Fidelity & Guaranty Co., 843 F.Supp. 164, 175 (S.D.Miss.1993), this court recognized that

an exception to this rule arises where the stockholder seeks damages for the violation of a duty owed directly to him, see Howell Steel Co., Inc. v. Trustmark Nat'l Bank, 666 F.Supp. 930, 931 (S.D.Miss. 1987), but the exception comes into play only where "the wrong itself amounts to a breach of the duty owed to the stockholder personally," Schaffer v. Universal Rundle Corp., 397 F.2d 893, 897 (5th Cir.1968), [and] has no application "merely because the acts complained of resulted in damage both to the corporation and to the stockholder." Id.

There is nothing in the plaintiffs' complaint in the case at bar to suggest that the case involves the breach of any duties owing to Gordon Sullivan individually and instead, as in the Jordan case, the claims concern alleged breaches of duties owed to the corporation and seek to redress wrongs allegedly done to the corporation. Accordingly, the court concludes that Gordon Sullivan lacks standing to sue. See also Cottingham v. General Motors Corp., 119 F.3d 373, 379 (5th Cir.1997) (dealer owner had no standing to sue for General Motors' alleged breach of dealer agreement with corporate dealership).[5]

█ From the conclusion that Gordon Sullivan, the only plaintiff whose citizenship is arguably not diverse from that of each defendant, is not a proper plaintiff, it follows that there does exist jurisdiction based on diversi-

---

5. The same reasoning would apply to the claims of Nancy Gage who, like Gordon Sullivan, is not alleged to have been an agent of MPIC and who is nothing more than an officer or stockholder in the company. The claims purported to be asserted by her individually will therefore be dismissed. However, inasmuch as it is alleged that John Sullivan was himself an agent of MPIC, the claims of his estate would not be strictly derivative of those of Nationalcare and therefore will not be dismissed.

ty of citizenship;[6] the citizenship of each of the remaining plaintiffs is diverse from that of each of the named defendants, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 (establishing requirements for diversity jurisdiction). That the requisites for diversity jurisdiction are met, however, does not necessarily mean that a federal court may exercise such jurisdiction upon removal, for "original subject matter jurisdiction and removal jurisdiction, although intimately related, are two separate concepts in the federal courts," *Cross v. Bell Helmets, USA*, 927 F.Supp. 209, 211–12 n. 3 (E.D.Tex. 1996), and "not all otherwise proper diversity suits are removable" since there are a number of statutory limitations upon removal, *id.* For example, and as is pertinent here, 28 U.S.C. § 1441(b) prohibits removal if any defendant is a citizen of the state in which the action was brought.[7] Acknowledging this provision, defendants in the case *sub judice* argue that even though Irving Parks is a Mississippi resident, his presence in the suit (assuming arguendo that he is otherwise a proper defendant in the sense that a viable claim has been stated against him)[8] does not deprive the court of removal jurisdiction since plaintiffs failed to timely seek remand on this basis under 28 U.S.C. § 1447(c). That section provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

In *In re Shell Oil Co.*, 932 F.2d 1518, 1521 (5th Cir.), *cert. denied*, 502 U.S. 1049, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992), the Fifth Circuit considered the meaning of the phrase, "any defect in removal procedure"—the operative language of § 1447(c) prior to a 1996 amendment—and determined that it included any non-jurisdictional defect that existed at the time of removal. The court then concluded that removal in violation of 28 U.S.C. § 1441(b) is not a jurisdictional defect but is a defect in removal procedure under § 1447(c) and held, more particularly, that the presence of two Texas defendants in a case removed from Texas state court was not a problem of subject matter jurisdiction. Consequently, the plaintiffs, having moved to remand thirty-three days following removal, were held to have waived their objection to the improper removal. *Id.* at 1523.

Citing *Shell*, which considered the timeliness of a motion to remand premised on a violation of § 1441(b), along with a number of other Fifth Circuit cases involving different statutory proscriptions against removal in cases which were otherwise within the subject matter jurisdiction of the federal courts, the court in *Williams v. AC Spark Plugs, Div. of General Motors Corp.*, 985 F.2d 783, 787 (5th Cir.1993), stated the following rule:

---

**6.** The court would note that whereas plaintiffs have alleged that Gordon Sullivan is a Mississippi resident, St. Paul contends and has adduced evidence which it submits shows that he is not a citizen of Mississippi but rather is a citizen of Arkansas. In the face of St. Paul's proof, plaintiffs maintain that Gordon Sullivan is, in fact, a Mississippi citizen. They ask, though, that if the court is inclined to decide the remand motion on the basis of Gordon Sullivan's not being a Mississippi citizen, the court first allow them discovery relative to his citizenship and that the court then, upon completion of that discovery, hold an evidentiary hearing on the issue. Because the court concludes that Gordon Sullivan is not a proper plaintiff in any event, no determination of his citizenship need be made.

**7.** 28 U.S.C. § 1441(b) provides:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**8.** Plaintiffs allege in their complaint that "Irving Parks is liable to the Plaintiffs by way of indemnification for any amounts the Plaintiffs might owe without fault to St. Paul." Because St. Paul has previously sued Nationalcare in the Harrison County Circuit Court contending that Nationalcare is contractually liable to St. Paul, as MPIC's assignee/subrogee, for the losses caused by Parks, then Nationalcare obviously may properly sue Parks for indemnity. And contrary to St. Paul's implicit urging, it is not the case that claims for indemnity must necessarily be brought as third-party actions against the proposed indemnitor. Indemnity may appropriately be sought through a separate action.

If a plaintiff initially could have filed his action in federal court, yet chose to file in state court, even if a statutory provision prohibits the defendant from removing the action and the defendant removes despite a statutory proscription against such removal, the plaintiff must object to the improper removal within thirty days after the removal, or he waives his objection. Only in the case of a lack of subject matter jurisdiction—such as no diversity of citizenship, or the absence of a federal question if that were the sole ground for removal—may the plaintiff object to removal after the thirty-day limit. Any other objection is procedural and waived after thirty days.

In this case, plaintiffs did not actually base their motion to remand on any alleged violation of § 1441(b), but instead, grounded their motion to remand exclusively on their claim that the local defendant, Parks, was *not* fraudulently joined to defeat diversity. If the only issue in this case relating to the propriety of removal was that framed by plaintiff's remand motion, i.e., whether Parks had been fraudulently joined, then the timeliness of removal would not be an issue. That is because in a removed case in which the existence of diversity of citizenship wholly depends on a finding that a local defendant has been fraudulently joined, the presence/absence of such local defendant in the lawsuit necessarily affects the court's subject matter jurisdiction. *See Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 n. 16 (5th Cir.1995) ("It is well-known that a motion to remand for lack of subject matter

jurisdiction, as is at issue [where fraudulent joinder is alleged], is not subject to the ... time constraints" imposed by 28 U.S.C. S 1447(c)). This is not such a case, though, for defendants' removal challenged not only the propriety of Parks status as a party defendant, but also plainly asserted that there is diversity jurisdiction since Gordon Sullivan is not a proper plaintiff.[9] Thus, even with Parks in the lawsuit, there is diversity jurisdiction and therefore, applying the court's analysis and holding in *Shell*, this court concludes that his presence is no impediment to the exercise of that jurisdiction since plaintiffs failed to seek remand within the thirty days following removal.[10] The court, therefore, will deny plaintiffs' motion to remand, and proceeds now to consider St. Paul's motion to dismiss, for judgment on the pleadings or for summary judgment.

■ In its motion, St. Paul contends, based on what it maintains are the clear and unambiguous provisions of the fidelity bond issued to MPIC, that plaintiffs are not "insureds" under that bond and that accordingly they have not alleged any viable claim for recovery against St. Paul. Plaintiffs disagree and submit that the bond is indeed ambiguous on the question whether Nationalcare is an insured under its terms. They argue then, that applying the rule of *contra proferentem* to the bond leads to the conclusion that it is an insured and that all of its claims therefore survive the present motion.[11] They argue further that contrary to the position urged by St. Paul, not all of their claims

9. Defendants' Notice of Removal recited as follows:

[T]he removing defendants assert that Gordon L. Sullivan, named as a plaintiff herein, is a mere nominal and/or dispensable party who should be dismissed from this action, or alternatively, whose alleged Mississippi citizenship should be disregarded for purposes of federal subject matter jurisdiction.

10. Though the language of the current version of § 1447(c) is somewhat different from the language considered in *Shell*, in the court's opinion, the effect is the same and the reasoning of the court in *Shell* is fully applicable to the present version. *See* D.D. Seigel, *Commentary on 1996 Revision of Section 1447(c)*, at 53–54 (West.Cum. Supp.1997).

11. The rule of *contra proferentem* recognizes that "when plan terms remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the insured." *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451 (5th Cir.1995). Plaintiffs submit that this rule of contract construction, which is applied to contracts of adhesion, would be applied by this court upon its concluding that the St. Paul bond is ambiguous, since the bond is obviously a contract of adhesion, having been drafted by an insurance specialist. This bond, however, is not a contract between a knowledgeable insurer on the one hand and a layperson on the other, but rather is a contract entered between two knowledgeable insurers and cannot readily be deemed a contract of adhesion.

in this lawsuit hinge on their status as insureds. That is, some claims would remain even were the court to conclude that the plaintiffs are not insureds under the St. Paul bond.

Regarding whether Nationalcare (or any plaintiff) is an insured, St. Paul points out that in Item 1 of the bond's declarations, only Mutual Protective Insurance Company is listed following the heading, "Name and Principal Address of Insured (herein called Insured)." It further notes that the bond states, in Section 10 under the heading "Ownership," that "[t]his Bond shall be for the sole use and benefit of the Insured named in the Declarations hereof." St. Paul concludes, therefore, that while the term "insured" may not appear among the definitions set forth in the bond—an omission deemed significant by plaintiffs—the bond nevertheless does clearly and unambiguously provide that MPIC is the sole "insured." The court agrees. *See Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206 (5th Cir.1988) (fact that contract requires interpretation does not render it ambiguous); *Overstreet v. Allstate Ins. Co.*, 474 So.2d 572 (Miss.1985) (meaning and effect of clear and unambiguous policy provision is for court to decide).

The court, of course, is aware of the various parts of the bond to which plaintiffs have referred in an effort to demonstrate that an ambiguity exists. But in the court's opinion, these provisions, either singularly or in combination, do not have the effect of rendering the bond ambiguous on the subject of who is an insured.

The primary bond provision upon which plaintiffs rely in support of their claim that they are insureds is Insuring Agreement (J), which, according to plaintiffs, "includes as insureds under the policy 'Agents of Life Insurance Companies' with separate limits under Coverage A–General Agents and Coverage B–Soliciting Agents of Two Hundred Fifty Thousand Dollars ($250,000)." They reason that this Insuring Agreement (J), "[s]imply put ... means that General Agents and Soliciting Agents of life insurance companies who are named insureds under the policy are covered." This plainly is not a

reasonable interpretation of Insuring Agreement (J).

The bond recites that St. Paul has agreed to indemnify "the Insured"—which, again, is identified in the Declarations as MPIC—for various losses which are categorized and described in subparagraphs (A) through (Q), and which includes Insuring Agreement (J). That provision states, in pertinent part, as follows:

AGENTS OF LIFE INSURANCE COMPANIES

Coverage A: GENERAL AGENTS

Loss resulting directly from any dishonest or fraudulent act(s) committed by a General Agent acting alone or in collusion with others.

Such dishonest or fraudulent act(s) must be committed by the General Agent with the manifest intent to:

(a) cause the Insured to sustain such loss; and

(b) obtain financial benefit for the General Agent or another person or entity.

. . .

Coverage B: SOLICITING AGENTS

(1) Loss resulting directly from any dishonest or fraudulent act(s) committed by a Soliciting Agent acting alone or in collusion with others.

Such dishonest or fraudulent act(s) must be committed by the General Agent with the manifest intent to:

(a) cause the Insured to sustain such loss; and

(b) obtain financial benefit for the Soliciting Agent or another person or entity.

(2) Loss of Property resulting from any dishonest or fraudulent act(s) committed by a Soliciting Agent is also covered. . . .

Under the "Single Loss Limits Liability Schedule," a single loss limit of liability of $250,000 is established for losses under "Coverage A—General Agents" and "Coverage B—Soliciting Agents" of Insuring Agreement (J).

Insuring Agreement (J) clearly provides only that St. Paul is bound to indemnify its insured, MPIC, for *losses caused by* general agents and soliciting agents. It does not

provide, explicitly or implicitly, that general agents and soliciting agents are "insureds" under the policy and there is no arguable basis for contending otherwise. As St. Paul correctly notes, Insuring Agreement (J) merely describes a risk of loss which is covered and does not expand the definition of who is an "insured."

In addition to their reliance on Insuring Agreement (J) for their contention that they are insureds, plaintiffs assert that they are insured as "nominees" of MPIC, by virtue of that provision of the bond which states:

> Loss sustained by any nominee organized by the Insured for the purpose of handling certain of its business transactions and composed exclusively of its Employees shall, for all the purposes of this Bond, be deemed loss sustained by the Insured, regardless of whether or not any partner of such nominee is implicated in such loss.

Whatever else it may be, however, Nationalcare is not a nominee "organized by the insured," MPIC, but, as evidenced by its agency agreement with MPIC, is an independent company which contracted with MPIC to act as a general agent for MPIC.

Plaintiffs also rely on a subrogation clause endorsement in support of their claim to be insureds under the bond; but their reliance on the language of the endorsement is unavailing as it does not reveal any ambiguity regarding plaintiffs' status—or lack of status—under the bond. Section 7 of the bond, entitled "Assignment–Subrogation–Recovery–Cooperation," stated in subsection (f), as originally drafted, as follows:

> With respect to Insuring Agreement (J), this Bond does not provide Coverage in favor of any General Agent, Soliciting Agent or Servicing Agent, and upon payment to the Insured by [St. Paul] on account of any loss or losses for which such Agent is liable to the Insured, an assignment of such of the Insured's rights and causes of action as it may have against such Agent because of such liability shall,

to the extent of such payment, be given by the Insured to the [St. Paul], and the Insured shall execute all papers necessary to secure to St. Paul the rights which are herein provided.

That provision, however, was replaced by an endorsement which reads:

> With respect to Insuring Agreement (J), this Bond does not provide Coverage in favor of any Soliciting Agent, and upon payment to the Insured by [St. Paul] on account of any loss or losses for which such Agent is liable to the Insured, an assignment of such of the Insured's rights and causes of action as it may have against such Soliciting Agent (but not against any General Agent under contract therewith, unless such General Agent was in collusion with the Soliciting Agent in causing said loss or losses) by reason of such liability shall, to the extent of such payment, be given by the Insured to [St. Paul], and the Insured shall execute all papers necessary to secure to St. Paul the rights which are herein provided.

Plaintiffs reason that the deletion of "General Agent" from Section 7(f), and the addition of words which, according to plaintiffs, "unambiguously provide that the named insured is not to have an assignment of rights as against General Agents," make it clear that general agents are endorsed into the coverage as named insureds. It is manifest, however, that this endorsement does not affect who is a named insured under the bond. Rather, it serves only to identify the circumstances under which MPIC, "the Insured," is contractually obligated to assign its rights to St. Paul in the event of a loss covered by Insuring Agreement (J), and states against whom those rights may (or may not) be asserted without MPIC's consent. The endorsement has no bearing on the issue of who is an insured under the bond and in the court's opinion, nothing in the language of the endorsement operates to create an ambiguity with respect to who is covered as an insured.[12]

---

12. In reliance on this endorsement, plaintiffs argue that St. Paul could not validly receive an assignment of MPIC's rights on account of any loss caused by Parks, a soliciting agent, since the endorsement only permits such an assignment of rights and claims against a General Agent if "such General Agent was in collusion with the Soliciting Agent in causing said loss or losses." However, as St. Paul correctly notes, the endorsement does not purport to prohibit MPIC

In addition to these bond provisions, plaintiffs cite to Section 12 of the bond, entitled "Termination or Cancellation," as evidence that Nationalcare is an insured, and in particular, that language which states,

> [t]his Bond terminates as to any Employee, or any partner, officer or employee of any Processor, or any General Agent, Soliciting Agent or Servicing Agent: (a) as soon as any Insured, or a director or officer of the Insured, or a director or officer of the Insured not in collusion with such person, or any General, Soliciting or Servicing Agent or a director or officer thereof not in collusion with such person, discovers any dishonest or fraudulent act(s) committed thereby at any time, whether in the employment of the Insured or a General, Soliciting or Servicing Agent or otherwise, whether or not of the type covered under Insuring Agreement (A), (J) or (Q), against the Insured or any other person or entity, without prejudice to the loss of any Property then in transit in the custody of such person.

Plaintiffs submit that "St. Paul will be hard pressed to explain how this Bond will terminate as to a General Agent if it never applied to such in the beginning." The explanation, however, is obvious from the clear language used: Once the insured discovers that a general agent, a soliciting agent or servicing agent has committed dishonest or fraudulent acts, the bond will no longer cover losses caused by that general, soliciting or servicing agent. Thus, if MPIC were to discover that one of its general agents had committed dishonest or fraudulent acts, the bond would "terminate" as to such general agent, i.e., would cease to provide coverage for losses caused by that general agent.

■ Having duly considered the plaintiffs' various arguments, the court rejects plaintiffs' contention that the bond is ambiguous. They plainly are not insureds under what the court concludes are the clear and unambiguous terms of the bond and therefore, defendants' motion for summary judgment will be granted *as to those claims which are dependent upon Nationalcare's being an insured under the St. Paul bond.*[13] The parties disagree, though, as to which of plaintiffs' claims are in that category. St. Paul asserts that *all* the claims are dependent upon a finding that Nationalcare is an insured whereas plaintiffs state that some are so dependent (though they do not bother to advise the court which they contend are and which are not). The court has therefore reviewed plaintiffs' complaint in an effort to ascertain the basis for their causes of action, and, while plaintiffs' pleading approach has made the task exceedingly difficult, the court has determined that summary judgment should be entered on five of the sixteen counts set forth in the complaint on the ground that plaintiffs are not St. Paul's insureds. This includes Counts II ("Tort Arising Out of Contract"), III ("Willful Breach of Contract"), IV ("Breach of Covenants of Good Faith and Fair Dealing"), VI ("Breach of Fiducial Duties"), VII ("Insurance Bad Faith") and XV ("Indemnification"). It also seems that

from assigning its rights against a General Agent but rather only prescribes the circumstances under which it *must* do so. Further, St. Paul *has charged* that Nationalcare was in collusion with Parks. Finally, St. Paul claims that its payment to MPIC for the losses caused by Parks gives rise to a common law right to equitable subrogation which it submits enables it to pursue Nationalcare without the necessity of an assignment from MPIC.

13. Plaintiffs submit that summary judgment at this point in the case is premature since they have not yet had an opportunity for discovery and are desirous of conducting discovery and having the opportunity to submit evidence before the court decides St. Paul's summary judgment motion. They have moved, therefore, under Rule 56(f), for additional time within which to provide affidavits, documents and discovery. Plaintiffs have not suggested what affidavits or documents they would want to submit, if given additional time, and are not, in the court's opinion, in need of discovery to fully respond to this defendant's motion.

Were the court of the view that the bond was ambiguous, or even potentially so, the court might favorably view plaintiffs' request for discovery prior to ruling with respect to the viability of those of plaintiffs' claims which are clearly dependent upon their being treated as insureds under the bond. But given the court's opinion that the terms of the bond are clear in themselves such that resort to extraneous evidence to prove their meaning is unnecessary, it follows that any discovery which plaintiffs claim to need would be of matters which are not relevant and that any such discovery is thus unnecessary.

summary judgment is proper as to Count IX ("Tortious or Fraudulent Conspiracy"), but only to the extent that it charges "Defendants" with having tortiously and fraudulently conspired to deprive plaintiffs of rights to which they are entitled under the St. Paul bond. Though it is not readily apparent exactly what factual and/or legal basis supports (or is alleged to support) each of the remaining counts, it does not appear that those counts are related to St. Paul's failure to pay under its bond.[14]

As to two of the remaining counts, Counts XIII and XIV, which charge defendants with malicious prosecution and abuse of process, respectively, both St. Paul and MPIC have moved to dismiss or, for summary judgment, but on different grounds.[15] For its part, MPIC argues that it is entitled to dismissal of those counts since fundamentally, in order for there to be a viable claim of malicious prosecution, there must be a prosecution, and for there to be an abuse of process, the defendant must have perverted the process of a court; and, since MPIC has never sued Nationalcare or any plaintiff, never had process issued and never prosecuted any action against any plaintiff, then there can be no basis for either a malicious prosecution or abuse of process claim by plaintiffs against MPIC. MPIC's position has obvious merit

and therefore, its motion to dismiss these claims will be granted.

■■■ St. Paul initially urged expiration of the applicable limitations period of Miss. Code. Ann. § 15–1–47 as the basis for its request for dismissal of plaintiffs' malicious prosecution and abuse of process claims against it, pointing out in its motion that its lawsuit against Nationalcare was commenced more than a year before plaintiffs filed this lawsuit on September 24, 1997. In response to St. Paul's motion, plaintiffs contended that pursuant to Miss.Code Ann. § 15–1–57, the running of the statute of limitations was tolled during the pendency of the Harrison County lawsuit (at least until that court entered a stay in favor of this litigation). St. Paul appears to have conceded this point in its rebuttal memorandum,[16] but contends that the claims are due to be dismissed for failure to state a claim. More particularly, it submits that since there has been no termination of St. Paul's lawsuit against Nationalcare, there necessarily has been no termination of the prosecution in favor of Nationalcare—an essential element of the cause of action of malicious prosecution—and therefore, the malicious prosecution claim must be dismissed. It claims further that the abuse of process claim must be dismissed since regardless of whether it is ulti-

---

14. Count I, captioned "Gross Negligence," appears to relate, at least insofar as St. Paul is concerned, to its "recklessly causing or allowing a civil suit to be brought against plaintiffs." Count V, entitled "Slander of Business," cryptically recites that "[d]efendants committed commercial slander, slander of business or disparagement against Plaintiffs," leaving one to speculate as to which of plaintiffs' factual allegations this might possibly relate. In Count VIII, plaintiffs allege that "Defendants committed conversion or civil theft arising out of the contracts between Plaintiffs and Defendants," but they do not identify which defendants and/or which contracts and/or what specific property was stolen or converted by which defendants. Count IX charges that "Defendants entered into a civil tortious or fraudulent conspiracy to deprive Plaintiffs of rights to which they are entitled under the terms of the contracts entered into and consummated between the parties," but again does not identify which defendants, what agreement, what rights or which contracts provide the basis for this claim. Count X, entitled "Common Law Fraud," states only that "[t]he Defendants have

committed the fraud of concealment, as particularly described," but no indication is given as to which of the approximately 125 paragraphs of factual allegations this relates. Nor is the single statement comprising Count XII that "Defendants have committed the tort of outrage by engaging in conduct so outrageous as to shock the conscience of a reasonable person in regard to their actions against Plaintiffs" the least bit illuminating.

15. They have also purported to move to dismiss Count V, entitled "Slander of Business," but it is not at all clear that the grounds urged for dismissal would apply to this count (though that may simply be because it is not at all clear to what facts that count is supposed to relate).

16. In the rebuttal brief, St. Paul does not challenge plaintiffs' contention that the limitations period was tolled, and instead, says that "[r]egardless of whether Plaintiffs' claims ... are protected by Miss.Code Ann. § 15–1–57," the claims must be dismissed for failure to state a claim.

mately able to prove its claims against Nationalcare, it was certainly entitled to bring legal proceedings against Nationalcare and has stated a valid and viable cause of action against Nationalcare. Having considered St. Paul's arguments, the court agrees that Nationalcare has failed to state a malicious prosecution claim since it has not (and at this time cannot) allege that the litigation commenced by St. Paul has terminated in its favor. *See State of Mississippi v. Turner*, 319 So.2d 233, 235 (Miss.1975) (malicious prosecution claim dismissed due to plaintiffs' failure to allege that there had been a final determination in their favor of the proceedings). However, in the court's opinion, Nationalcare, having alleged that St. Paul brought suit against it maliciously and in bad faith for the purposes of harassment and oppression, has stated a claim for relief. *See id.* at 236 (abuse consists in unlawful use of process properly issued).[17] *See Enlow v. Tishomingo County*, 962 F.2d 501, 512 (5th Cir.1992). Therefore, the court must deny St. Paul's motion to dismiss the abuse of process claim.[18]

In conclusion, it is ordered, based on the foregoing, that plaintiffs' motion to remand is denied. It is further ordered that MPIC's motion to dismiss is granted, and it is ordered that St. Paul's motion to dismiss, for judgment on the pleadings or for summary judgment is granted in part and denied in part as set forth herein.[19]

---

[17]. The court, of course, expresses no opinion as to the potential merit of that claim but concludes only that a claim for relief has been stated.

[18]. St. Paul purports in its motion to dismiss, for judgment on the pleadings or for summary judgment to seek dismissal of the plaintiffs' claims against Parks on the ground that they are time-barred. St. Paul has offered no explanation,

---

however, as to the basis upon which it might seek dismissal on behalf of another party, and in the court's view, lacks standing to make such a motion on behalf of Parks.

[19]. All other motions pending in this cause at this time are denied as moot.