William "Sonny" KIRSCHENHEUTER
Plaintiff

v.

BOARD OF TRUSTEES OF THE
GSC–ILA PENSION PLAN
AND TRUST Defendants

No. CIV.A. 1:02CV765GRO.

United States District Court,
S.D. Mississippi,
Southern Division.

July 13, 2004.

Floyd J. Logan, Logan and Bise, Gulf-
port, MS, for Plaintiff.

Jeffrey Grant Pierce, Allen, Vaughn, Cobb & Hood, Gulfport, MS, for Defendants.

## *MEMORANDUM OPINION*

GEX, Senior District Judge.

This cause is before the Court on the motion [15–1] for summary judgment and rebuttal motion [18–1] for summary judgment filed by the Defendant, Board of Trustees of the GSC–ILA Pension Plan and Trust, and on the Response filed by the Plaintiff, William "Sonny" Kirschenheuter. After due consideration of the evidence of record, the briefs of the parties, and the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### *Statement of Facts*

Kirschenheuter brings this litigation pursuant to section 1132(e)(1), Title 29, United States Code, disputing the amount of monthly disability benefits awarded him by the Board of Trustees of the GSC–ILA Pension Plan and Trust Agreement [the Board]. The GSC–ILA Pension Plan and Trust Agreement [the Plan] was established by the various employers and Local 1303 of the International Longshoreman Association [ILA] labor union for the purpose of providing retirement benefits to eligible longshoremen working in the Port of Gulfport, Mississippi, covered under the provisions of the collective bargaining agreement between the employers and the union. (Ct. R., Doc. 7, ¶ 4; Ct. R., Doc. 3, p. 1; *see also* Def's. Br., p. 2.) The Board is a body created under the terms and provisions of the Plan and vested with the duty of general administration of the Plan's terms and provisions. (Ct. R., Doc. 7, ¶ 3; Ct. R., Doc. 3, p. 2.)

Kirschenheuter was employed as a longshoreman at the Port of Gulfport for various employers under the collective bargaining agreement with the ILA from October 1, 1967, through September 30, 1997. (Ct. R., Doc. 7, ¶ 5.) On February 1, 1996, Kirschenheuter applied to the Board for disability benefits. (Ct. R., Doc. 15, Exh. 5, p. 1.) Although he was approved for early retirement at that time, his application for disability was denied because he had not yet received a Social Security disability award as required under the terms of the Plan.[1] (*Id.*)

On July 24, 1998, the Social Security Administration [SSA] determined that Kirschenheuter was disabled as defined by the Social Security Act and set the date of his disability at June 6, 1995. (Ct. R., Doc. 7, ¶ 6.) Kirschenheuter re-applied to the Board for a disability pension on July 21, 1998, and on January 6, 1999, the Board attorney advised Kirschenheuter that he had been awarded disability benefits in the amount of $440.23 per month effective August 1, 1998. (*Id.*, ¶ 7; Ct. R., Doc. 3, p. 2.) Kirschenheuter was sent a check in the amount of $2,671.38 on or about January 6, 1999, and a check in the amount of $440.23 on or about January 29, 1999. Kirschenheuter refused both checks, disputing the administrator's calculation of his benefit. (Ct. R., Doc. 15, Exh. 5, pp. 2–3.) On March 18, 1999, the Plan administrator, Shannon Millette, sent Kirschenheuter's attorney a letter advising that Kirschenheuter's disability pension benefit was revised upward to $449.07 to correct an error in the initial calculation. (Ct. R., Doc. 17, Exh. 5.) Millette's letter indicated, however, that as Kirschenheuter had returned the previous checks, Millette would wait to

---

1. Pursuant to section 5.03(b) of the Plan, "[a][p]articipant will be considered as 'Disabled' if and only if he has received an award from the Social Security Administration granting the person Social Security disability insurance benefits." (Ct. R., Doc. 15, Exh., A.)

hear from Kirschenheuter or his attorney before issuing new checks. (*Id.*)

Kirschenheuter remained dissatisfied with the Plan administrator's calculation of his benefits, and on September 3, 2002, initiated the present action against the board in the Chancery Court of Harrison County, Mississippi. (Ct. R., Doc. 1, Exh. A.) The Board removed the action to this Court on October 9, 2002, on the basis of federal question jurisdiction. (Ct. R., Doc. 1.)

Kirschenheuter claims that the Board erroneously determined the date of his disability and his years of service under relevant sections on the Plan. (Ct. R., Doc. 7, ¶ 8.) He contends that the correct amount of his monthly disability pension benefit is $642.00 retroactive to July 24, 1998, rather than the $449.07 retroactive to August 1, 1998, awarded by the Board. (*Id.*, ¶ 9.)

The matter is currently before the Court on the motion for summary judgment and supplemental motion for summary judgment filed by the Board. (Ct. R., Docs. 15 & 18.)

### Standard of Review

Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1, 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted). A district court may properly grant a motion for summary judgment when, after viewing the facts in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Deas v. River West, L.P.*, 152 F.3d 471, 475 (5th Cir.

1998). Stated differently, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The Court finds that no genuine issues of material fact exist in the case *sub judice*. The parties simply dispute the Plan's application to the facts at hand.

### Legal Analysis

The Board asserts that it is entitled to judgment as a matter of law on the following bases: (1) Kirschenheuter has offered no evidence to support his contention that he is entitled to a monthly disability benefit of $642; (2) the administrator's interpretation of the Plan was legally correct; (3) the administrator's decision regarding Kirschenheuter's date of disability was not an abuse of discretion; and (4) Kirschenheuter has offered no proof to establish that the administrator failed to act in good faith. (Ct. R., Doc. 15.)

 When reviewing a denial of benefits claim under 29 U.S.C. § 1132, the plan administrator's interpretation of the plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Aboul–Fetouh v. Employee Benefits Committee*, 245 F.3d 465, 472 (5th Cir.2001) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989)). "Where a plan does vest the administrator with such discretionary authority, courts review the decision under the more deferential abuse of discretion standard." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir.1998) (citing *Barhan v. Ry–Ron, Inc.*, 121 F.3d 198, 201 (5th Cir.1997); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631,

636 (5th Cir.), *modified on other grounds,* 979 F.2d 1013 (5th Cir.1992)). Pursuant to Article 12 of the Plan in question, the Board is responsible for the general administration of the Plan. (Ct. R., Doc. 15, Exh. A of Exh. 2, § 12.01.) Section 12.05(h) provides:

> ... The Trustees shall have full authority to determine all questions of coverage and qualifications as to participation in and receipt of benefits under the Plan, and shall have the power to construe the provisions of this Trust Agreement and the terms used herein, and such questions as determined, or any construction so adopted by the Trustees in good faith shall be binding upon all parties and persons concerned.

(*Id.,* Exh. A of Exh. 2, § 12.05.) The Board is further vested with the authority to employ any agents, legal counsel, auditors, and clerical and administrative personnel as may be necessary for the sound and efficient administration of the Trust. (*Id.,* Exh. A of Exh. 2, § 12.05(d).) Based on the foregoing language, the Court finds that the Board is vested with discretionary authority to construe the terms of the Plan. As a result, its determination is reviewed under an abuse of discretion standard.

 Judicial review of an administrator's interpretation under the abuse of discretion standard is a two-step process: first, the court must "determine whether the administrator's interpretation is legally correct; if it is not, the court must decide whether the decision was an abuse of discretion." *MacLachlan v. ExxonMobil Corp.,* 350 F.3d 472, 481 (5th Cir.2003)(citing *Abraham v. Exxon Corp.,* 85 F.3d 1126, 1131 (5th Cir.1996); *Pickrom v. Belger Cartage Serv.,* 57 F.3d 468, 471 (5th Cir.1995)).

> For the first part of the inquiry, the courts assess three factors to determine whether the interpretation is legally correct: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. In some cases, however, the court may skip this first part of the inquiry if it can determine that the decision was not an abuse of discretion.

*MacLachlan v. ExxonMobil Corp.,* 350 F.3d at 481 (citing *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631 at 638; *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1307 n. 3 (5th Cir.1994)).

> If the administrator has applied a legally correct interpretation of the plan, then no further inquiry is required. However, if the Court determines that the administrator's interpretation is legally incorrect, then it must evaluate whether that interpretation constitutes an abuse of discretion. In conducting this analysis, the Court must look to: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith.

*Blum v. Spectrum Restaurant Group, Inc.,* 261 F.Supp.2d 697, 711 (E.D.Tex. 2003) (internal citations omitted). It is Kirschenheuter who bears the initial burden of demonstrating his entitlement to benefits under the Plan or that the administrator's decision was arbitrary and capricious. *See Haley v. Metropolitan Life Ins. Co.,* 189 F.Supp.2d 567, 573 (S.D.Miss. 2001) ("A claimant under [section] 1132(a)(1)(B) has the initial burden of demonstrating entitlement to benefits under an ERISA plan, or that a denial of benefits under an ERISA plan is arbitrary and capricious.") (citing *Perdue v. Burger King Corporation,* 7 F.3d 1251, 1254 (5th Cir. 1993)).

## I. *Date of Disability*

Kirschenheuter asserts that the plan administrator erroneously determined the effective date of his disability under sections 6.04 and 5.03(b) to be June 6, 1995, rather than July 24, 1998. (*Id.,* ¶ 8; Pl's. Br., p. 3.) The former date is the day on which Kirschenheuter became disabled as determined by the SSA. The latter date is the day on which the SSA issued its determination in Kirschenheuter's case. Because monthly benefits under the plan have increased by amendment over the years, a later disability date for Kirschenheuter would translate into increased monthly benefits. (Pl's.Br., p. 4.)

Pursuant to Section 6.04 of the Plan, "[t]he monthly Disability Benefit payable to an eligible Participant shall be his Accrued Benefit earned to his 'Date of Disability' (as defined in Section 5.03(b)) ..." (Ct. R., Doc. 15, Exh. A of Exh. 2, § 6.04.) Section 5.03(b), in turn, states that "[t]he Participant's "Date of Disability" will be the effective date of such award as shown on such award." (*Id.,* Exh. A of Exh. 2, § 5.03.) Thus, "date of disability," as that term is used in the Plan, is the effective date of the participant's Social Security award.

The Board has interpreted the date of disability, for purposes of calculating a participant's benefits, to mean the date upon which the participant became disabled as determined by the SSA, as opposed to the date on which the SSA issued its decision. (Ct. R., Doc. 15, Exh. 8, pp. 22–23; Exh. 6, p. 3.) In the words of Shannon Millette, the Plan's administrator,

"[t]he disability benefit should not be determined by the speed with which the Social Security Administration hears a particular matter. If so, two identically situated longshoremen, both injured on the same [date] might receive a different benefit because of different hearing dates with the Social Security Administration." (*Id.,* Exh. 6, pp. 3–4.) This rationale was echoed by the assistant administrator, Victor Walsh. (*Id.,* Exh. 8.)

Kirschenheuter insists, however, that the effective date of the Social Security award is July 24, 1998—the date of the SSA's decision. Further, he argues, the administrator has provided no competent evidence that the Plan has been given a uniform construction. He points out that the Board's own attorney, in a letter to Plaintiff's counsel dated January 6, 1999, construed the Plan language in a manner consistent with Kirschenheuter's position. The letter in question states:

> You reapplied for a G.S.C.-I.L.A. pension on July 21, 1998, after receiving your Social Security Disability Award on July 15, 1998, which contained a retroactive effective date of July 6, 1995. Based on your July 21, 1998 application, the Trustees approved you effective on the first of the month following your date of application. This decision was based on Section 6.04 of the Plan which provides that the disability pension is to start on the first day of the month following the later of (i) the effective date of the award of disability from the Social Security Administration (July 15, 1998), or (ii) your application for a disability pension (July 21, 1998)." [2]

---

**2.** While references to July 15, 1998, are scattered throughout the record (Ct. R. Doc. 15, Exhs. 5, 6, 8 at p. 22, and Pl's. Br., Exh. 4.), no document corresponding to that date has been provided to the Court. It appears the parties understand July 15, 1998, to be the date of the SSA's decision with regard to Kirschenheuter's case (*see* Ct. R., Doc. 15,

Exh. 8, pp. 21–22). The copy of the SSA's decision attached to the amended complaint, however, is dated July 24, 1998. (Ct. R., Doc. 7, Exh. B.) For purposes of the Board's motions for summary judgment, the Court has interpreted both dates to reference the date on which the SSA issued its decision.

(Pl's.Br., Exh. 4.) The applicable portion of section 6.04 actually states: "The monthly Disability Benefit shall begin on first of the month coincident with or next following the later of: (a) the "Date of Disability" (as defined in Section 5.03(b)), or (b) the date the application for a monthly Disability Pension is filed with the Board of Trustees." (Ct. R., Doc. 15, Exh. A of Exh. 2, § 6.04.) Thus, for purposes of determining the start date of Kirschenheuter's benefits, the Board's attorney interpreted the date of disability as the effective date of the award of disability from the SSA or July 15, 1998—not the dates upon which he became disabled. Walsh and Millette have interpreted this portion of section 6.04 in the same manner, as evidenced by statements in their affidavits that "[s]ection 6.04 of the Plan provides that the disability pension is to start on the first day of the month following the later of (i) the effective date of the award of disability from the Social Security Administration (July 15, 1998), or (ii) your application for a disability pension (July 21, 1998)." (Ct. R., Doc. 15, Exh. 5, p. 2 & Exh. 6, p. 2.) When questioned about this interpretation during his deposition, Walsh stated, "[t]his has to do with when it's payable ... not the effective date of the award. It's only the payable date. It's a different thing." (*Id.*, Exh. 8, pp. 26–27.) It appears, therefore, that for purposes of calculating the start date of a participant's disability pension, the administrators and the Board's attorney have construed the date of disability to mean the date of the SSA's decision, but for purposes of calculating the disability benefit, they have construed the term to mean the date upon which the participant actually became disabled. The Plan, however, makes no such distinction. Whether for purposes of determining the start date of payments or for calculating disability benefits, the Plan defines date of disability as simply "the effective date of [the Social Security] award as shown on such award." (Ct. R., Doc. 15, Exh. A of Exh. 2, §§ 6.04 & 5.03.)

As explained previously, judicial review of an administrator's decision under the abuse of discretion standard begins with a determination of whether the administrator's interpretation of the plan is legally correct. *MacLachlan v. ExxonMobil Corp.*, 350 F.3d at 481. In making this determination, the Court must consider (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. *Id.* There is no evidence before the Court concerning unanticipated costs resulting from different interpretations of the Plan. The Court, therefore, focuses its attention on the first two factors.

The administrators have interpreted the date of disability, for purposes of determining a participant's monthly disability benefit, as the date upon which the participant became disabled as determined by the SSA. The Court finds that this interpretation is consistent with a fair reading of the plan. Further, the Court agrees with the reasoning set forth by the administrators that it would produce inconsistent results if a participant's date of disability were tied to the date on which the SSA issued its decision. The Court is concerned, however, that the administrators have failed to give the plan a uniform construction.

Walsh testified during his deposition that provisions of section 6.04 and 5.03 have been consistently interpreted to refer to the onset of disability as determined by the SSA stating, "I think we've done well over 100, if not 200, applications for disability, and that's been a consistent thing throughout." (Ct. R., Doc. 15, Exh. 8, p.

32.) As discussed above, however, it would seem that the administrators have interpreted the date of disability to mean one thing as it relates to the calculation of benefits and quite another thing for purposes of determining the start date of those benefits.

Despite this apparent inconsistency in their construction of the plan, the Court finds that the administrators have given the term, as it relates to calculation of benefits, a legally correct interpretation. It is both fair and logical to tie the participant's disability benefits to the date upon which the participant became disabled rather than, as argued by Kirschenheuter, to the date upon which the SSA issued its decision. If, as urged by the Plaintiff, the date of disability is interpreted as the date of the SSA's decision, the amount of the disability benefit would vary from participant to participant depending on the speed with which the SSA processed its applications.

■ Kirschenheuter asserts that the Plan's language is, at best, ambiguous and proceeds to cite, albeit without argument, the *contra proferentem* rule of contract interpretation. (Pl's.Br., pp. 5–6.) The rule of *contra proferentem* provides that "[i]n choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds." *Spacek v. Maritime Ass'n,* 134 F.3d 283, 299 (5th Cir.1998) (*abrogated on other grounds by Central Laborers' Pension Fund v. Heinz,* — U.S. —, 124 S.Ct. 2230, 159 L.Ed.2d 46 (U.S.2004)) (quoting Restatement (Second) of Contracts § 206 (1981)). It is often applied in the context of insurance contracts: "[W]hen plan terms remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the in-

sured." *Nationalcare Corp., Inc. v. St. Paul Property and Cas. Ins. Co.,* 22 F.Supp.2d 558, 565, n. 11 (S.D.Miss.1998) (quoting *Todd v. AIG Life Ins. Co.,* 47 F.3d 1448, 1451 (5th Cir.1995)).

A number of circuits have determined that the doctrine of *contra proferentem* does not apply when construing ERISA plans reviewed under the abuse of discretion standard. *See Spacek v. Maritime Ass'n,* 134 F.3d at 299 n. 14 (citing *Cagle v. Bruner,* 112 F.3d 1510, 1519 (11th Cir. 1997)) ("[T]he arbitrary and capricious standard of review would have little meaning if ambiguous language in an ERISA plan were construed against the Fund."); *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 443 (2d Cir.1995) ("[A]pplication of the rule of *contra proferentem* is limited to those occasions in which this Court reviews an ERISA plan *de novo.*"). The Court of Appeals for this Circuit, however, has opined that "it is possible for the rule to be used in determining the legally correct meaning of an ambiguous ERISA plan, the first step of [the] abuse of discretion review." *Spacek v. Maritime Ass'n,* 134 F.3d at 299 n. 14 (citing *Wildbur,* 974 F.2d at 637). The Court explained:

> If the administrators did not adopt the interpretation of the plan dictated by whatever rule of decision we apply—in the case of *contra proferentem,* this would be the reasonable interpretation most favorable to the plan participants—then we proceed to the second portion of our analysis in order to determine whether the legally incorrect interpretation adopted by the administrators constituted an abuse of discretion. The fact that plan administrators have adopted one reasonable interpretation of the plan does not foreclose our proceeding to the second step of our review for abuse of discretion. [A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the

conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

*Id.* (citations and internal quotation marks omitted.)

Kirschenheuter seemingly fails to recognize, however, that if the date of disability were construed as he urges, he would be ineligible for disability benefits under the plan all together. Pursuant to section 5.03(a)(iv), to be eligible to receive monthly disability benefits, a participant must have actually worked at least 150 hours in covered employment during either: (1) the plan year containing the date of disability or (2) the plan year immediately preceding the plan year containing the date of disability. (Ct. R., Doc. 15, Exh. A of Exh. 2.) Kirschenheuter worked a total of 507.5 hours in the Plan year October 1, 1993 to September 30, 1994. (Pl's.Br., Exh. 9.) The following year, he worked 140.16 hours. (*Id.*) He did not work in the Plan year October 1, 1995 to September 30, 1996. (*Id.*) He worked only one hour in the Plan year October 1, 1996 to September 30, 1997, and did not work during the following Plan year—October 1, 1997 to September 30, 1998. (*Id.*) Pursuant to section 5.03(a)(iv), to be eligible for disability benefits. Kirschenheuter needed a minimum of 150 hours in either the Plan year containing his date of disability or the Plan year immediately before. If Kirschenheuter's date of disability were determined to be July 24, 1998, as he urges, he would be ineligible for benefits because he did not work at least 150 hours in either the Plan year from October 1, 1997 to September 30, 1998, or the Plan year October 1, 1996, to September 30, 1997. By contrast, when Kirschenheuter's date of disability is determined to be July 5, 1995, as found by the Board, he is eligible for benefits, having worked 507.5 hours the preceding Plan year.

Based on the foregoing, the rule of *contra proferentum* does not compel the Court to adopt Kirschenheuter's interpretation of the Plan for the simple reason that it would serve to bar him from benefits entirely. The Court, therefore, remains persuaded that the Board's determination of the date of disability, as it relates to calculating a the participant's benefits, is legally correct.

■ Alternatively, even if the court were to assume for purposes of argument that Kirschenheuter could overcome the hurdles discussed above and show that the Board's interpretation of the Plan was not legally correct, the Court finds that Kirschenheuter has failed to adduce any evidence or argument which demonstrates abuse of discretion.

■ In determining whether the Board abused its discretion, precedent dictates that the Court consider (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of lack of good faith. *Wildbur,* 974 F.2d at 637–638 (citing *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 56 (5th Cir.1990)). Kirschenheuter offers no evidence which even remotely suggests bad faith on the part of the Board, and neither party has brought to the attention of the Court any relevant agency regulations. The only factor which weighs in favor of Kirschenheuter is that the Board has failed to interpret the date of disability consistently throughout the plan. There is no evidence, however, that this inconsistency serves the interest of the Board at the expense of the Plan's beneficiaries. The Court is simply without sufficient evi-

dence to support a finding of abuse of discretion.

## II. *Years of Service*

 Kirschenheuter also contends that he should be given credit for 24 years of service, as opposed to 23, based on the fact that he worked one hour during the Plan year beginning October 1, 1996, and ending September 30, 1997. (Pl's.Br., p. 6.) While the Plan allows credit for even one hour of work in a given year (Ct. R., Doc. 15, Exh. 8, p. 7), the administrator declined to give Kirschenheuter credit for the hour worked in 1996–97, reasoning that a person cannot simultaneously be disabled and work. (Def's. Br. in Sup. of Reb. Mot. for Summ. J., p. 7.) The Board's attorney stated that Kirschenheuter would not be given credit for the hour he worked after his date of disability because it would have rendered him ineligible for a disability pension. (Pl's. Br. in Opp. to Mot. for Summ. J., Exh. 6.)

Citing sections 503(b) and (c), Kirschenheuter asserts that the Board's position conflicts with the clear wording of the Plan:

> (b) A Participant will be considered as "Disabled" if an only if he has received an award from the Social Security Administration granting the person Social Security disability insurance benefits. The Participant's "Date of Disability" will be the effective date of such award as shown on such award.

> (c) If the Social Security disability insurance benefits for a disabled Participant are terminated, then the person's monthly Disability Pension shall be terminated as of the effective date of the termination of the Social Security disability insurance benefits.

(Ct. R., Doc. 15, Exh. A of Exh. 2, § 5.03.) Based on this language, Kirschenheuter

argues that disability status is entirely dependent on the SSA's determination of disability. (Pl's. Br. in Opp. to Mot. for Summ. J., p. 8.) In other words, the fact that Kirschenheuter worked after the date he became disabled—and whether or not he receives credit for such work—would have no effect on his disability status.

Having considered the relevant portions of the plan, the Court finds that the reasoning behind the Board's decision to decline Kirschenheuter credit for the hour worked in the 1996–1997 Plan year misses the mark. Despite this fact, the plain language of the plan supports no other decision. Pursuant to section 6.04, which governs the calculation of disability benefits, a participant's disability benefit "shall be his Accrued Benefit earned *to* his 'Date of Disability' (as defined in Section 5.03(b)) ..." (Ct. R., Doc. 15, Exh. A of Exh. 2, § 6.04) (Emphasis added.) Section 3.01 defines Accrued Benefit as -

> ... the amount a Participant has earned *to a certain date,* determined in accordance with the following procedure:

> (a) Multiplying the retirement benefit such Participant would be entitled to receive pursuant to the provisions of Section 6.02, at his Normal Retirement date as determined in (b), based upon the average number of hours he was employed in Covered Employment *to the applicable date,* as if he had otherwise satisfied all of the requirements of Section 5.02, by

> (b) a fraction, the numerator of which is the number of Years of Service the Participant has accumulated *to the applicable date,* and the denominator of which is the number of years of Service, not to exceed 30, the Participant would have accumulated to his Normal Retirement Date if such employment in the industry continued, such Normal Retirement

date to be determined in accordance with Section 5.02, provided, however, that only Years of Service actually earned shall be considered in such determination.

(*Id.*, Exh. A of Exh. 2, § 3.01.) When section 3.01 is read in light of section 6.04, the terms "certain date" and "applicable date" italicized above can only refer to the date of disability. Kirschenheuter's disputed hour of service, which fell during the plan year October 1, 1996 to September 30, 1997, occurred *after* his date of disability. Consequently, under the express terms of the plan, it could not be considered for purposes of determining his accrued benefit.

For this reason, the Court finds that the Board's decision to deny Kirschenheuter credit for the hour worked in the 1996–1997 Plan year is consistent with a fair reading of the plan. In the absence of evidence or compelling argument to the contrary, the Court finds that the Board's decision was legally correct. As such, the Court finds it is not necessary to discuss whether the decision constituted abuse of discretion.

### III. *Effective Date of Award*

█ Finally, Kirshenhueter submits that his benefit should be retroactive to July 24, 1998, the date of the SSA's decision, rather than August 1, 1998, as determined by the Board. (Ct. R., Doc. 7, ¶ 9.) Section 6.04 of the Plan governs the start date of disability benefits and provides: "The monthly Disability Benefit shall begin on [the] first of the month coincident with or next following the later of: (a) the "Date of Disability" (as defined in Section 5.03(b)), or (b) the date the application for a monthly Disability Pension is filed with the Board of Trustees." Regardless of the interpretation given the date of disability, there is no support for Kirschenheuter's claim that his pension benefits should have started on July 24, 1998. Even if the

Court were to assume for purposes of argument that Kirschenheuter's date of disability was July 24, 1998, the Plan would still dictate that benefits begin, at the earliest, on August 1, 1998. The Court, therefore finds that the Board's decision concerning the start date of Kirschenheuter's benefits was legally correct, and as such it is not necessary to discuss whether the decision constituted abuse of discretion.

### *Conclusion*

For the reasons stated herein, the Court finds that there are no genuine issues of material fact and that, as a matter of law, the Board is entitled to an award of summary judgment on Kirschenheuter's claims.

A separate Final Judgment in accordance with this Memorandum Opinion shall issue this date.